Warfel, Appellant, *v.* Vondersmith.

Argued November 10, 1953. Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-
NOLD, JJ.

*Harris C. Arnold,* with him *Bruce P. Ryder, John W. Beyer* and *Arnold, Bricker & Beyer,* for appellant.

*Charles W. Eaby,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, January 4, 1954:

While there does not appear to be any precedent in Pennsylvania controlling the decision of the present appeal an application of the established principles governing other aspects of the problem supports the view taken by the court below and calls for an affirmance of its order.

The facts are these: Plaintiff, a general contractor, entered into a contract with Lancaster Newspapers, Inc., to demolish old structures and erect a new building on property belonging to it in the City of Lancaster. The new building was of heavy construction and required excavation for foundations and cellar to a depth of from 16 to 20 feet below the street level. Defendants are the owners of a property adjoining that of the Newspapers, and on it was erected a two-story brick store building together with a one-story structure used as a store room. These buildings were situated along the boundary line between the two properties; neither of them had a cellar or basement; but they rested on foundations which in general extended not more than 3 or 4 feet below the surface of the ground.

Plaintiff's plans called for an excavation along the boundary line for a distance of approximately 160 feet. Before starting operations he notified defendants of his intentions and that they should take all necessary measures to support their buildings. After some consultation and negotiations which proved abortive, defendants employed another contractor who undertook to protect their buildings from collapse by erecting certain temporary roof props or cribbing inside their buildings. Plaintiff notified defendants that in his opinion these precautions were wholly inadequate, but defendants refused to do any underpinning or shoring outside or under their buildings. Thereupon, allegedly in order to prevent interference with his work and injury to his workmen or other persons, plaintiff proceeded to underpin defendants' buildings at a cost of $3,572.37. Defendants had given plaintiff permission to enter upon their premises for that purpose but made no promise, express or implied, to pay the cost. Plaintiff brought the present action to recover the cost of the work. Defendants not only denied any obligation on their part to make such payment but filed a counterclaim for alleged damage to their property due to blasting and other operations conducted by plaintiff. The jury returned a verdict for plaintiff in the sum of $3,-183.05, apparently the full amount of the claim less part of the counterclaim. Defendants moved for a new trial which the court granted solely on the ground that in its opinion defendants were not liable to pay plaintiff for the work done to support their buildings; the counterclaim, however, made it impossible to enter a judgment n.o.v. Plaintiff appeals from the granting of the new trial.

As far as the rights and obligations of one excavating on his own property are concerned the law is so well established as to require no citations of the multi-

tude of authorities. At common law an owner of land is entitled to have it supported in its natural condition by the land of the adjoining proprietor. This right to lateral support is a natural right, not simply an easement but an incident to the land,—a right of property attached to and passing with the soil. If the adjoining owner by excavation removes such support, thereby causing the land to fall, he is responsible in damages without regard to his degree of care or to the fact that the excavation may have been performed by an independent contractor. The right to lateral support, however, does not extend to structures erected on the property which materially increase the lateral pressure and therefore contribute to the subsidence of the land. As far as such structures are concerned an owner may lawfully excavate on his land although he injures them; in the absence of negligence (which varies with the circumstances) he is not obliged to underpin or otherwise support them and he incurs no liability for damage which may be caused them by the excavation. His only duty is to give notice to the adjoining owner of his intention to excavate and thus afford the latter an opportunity of protecting his buildings from all likely injury.

So much as to the well recognized rights and duties of the excavating owner. But when we come to a consideration of the rights and obligations of the adjoining owner we find a marked dearth of authoritative judicial decision. True, it is generally held that *if* such owner wishes to protect his buildings from collapse it is for him to take the necessary measures at his own expense. But is he *obliged,* as a duty to the excavating owner or contractor, to underpin and shore up his buildings, and, if he refuses so to do after having been properly notified, can the excavating owner or contractor thereupon perform that work and com-

pel him to pay the cost thereof? The weight of existing authority is to the effect that his failure to support his buildings does *not* authorize the excavating owner or contractor to do so at the adjoining owner's expense.

Thus in *First National Bank v. Villegra,* 92 Cal. 96, 28 P. 97, it was said, (p. 99, P. p. 98) : "It clearly appears that plaintiff expended this money for his own benefit and his own advantage, and not for the benefit and use of the defendant. A party cannot of his own volition create an obligation in his own favor by doing some act for his own interests, and the necessity for which was caused by himself. This is in no sense an action brought for the recovery of money advanced for and to the use of defendant. No legal duty rested upon the defendant to perform the work for which this money was expended, and plaintiff cannot create for himself the position of creditor against the will of the alleged debtor."

In *Flanagan Bros. Manufacturing Co. v. Levine,* 142 Mo. App. 242, 125 S.W. 1172, it was said (pp. 245, 246, S.W. p. 1173) : "This notice [of the intended excavation] is for the purpose of giving the owner of the adjoining property warning and opportunity to protect his building, . . . If anything more is needed, as by shoring or underpinning, it is the duty of the owner of the building to do it, and not that of the adjoining proprietor; and the latter is under no obligation to protect the building, otherwise than by due care and expedition in prosecuting the work . . . If he goes beyond this, without being requested or employed to do so by the owner, and without its being necessary to preserve some right of his own, and performs a duty which lies upon the owners, it is his voluntary act, which does not give him a cause of action any more than would the voluntary payment of the debt of another without the latter's request."

In *Neyman v. Pincus,* 82 Mont. 467, 267 P. 805, it was said, (p. 486, P. p. 810) : "It is not the duty of the person making the excavation to support the buildings of adjoining owners, but that duty rests upon such owners . . . ; and, if the person making the excavation does so at his own expense, he cannot even recover from the owner of the building the amount necessarily expended for that purpose . . ."

In *Weisberger v. Maurer,* 9 N. J. Misc. 117, 153 A. 626 (aff. 109 N. J. Law 273, 160 A. 634) the court said, (p. 120, A. p. 628) : "I am impressed by the argument in defendant's brief, that 'if I own a shack worth less than the cost of protecting it, it seems very high handed to allow the adjoining owner to protect it regardless of cost, at my expense. It may fall and do no damage. It may not fall at all.' " It was there accordingly held that the plaintiff could not recover for expenditures made by him in shoring up the adjoining owner's property after notice to the latter and failure by him to do the work himself.

In *Korogodsky v. Chimberoff,* 256 Ill. App. 255, it was said (p. 258) : "If the owner of adjacent improved property does not see fit to protect himself and injury is sustained by him by reason of an excavation which is done with all reasonable care and skill, then he cannot recover, but the other person has no right to compel him to shore his own property. The one making the improvement, has a common law right to go upon the premises of the other for the purpose of shoring such building in order to protect property, when it is necessary, to prevent damage by reason of an excavation, but this is done at his own expense and cost."

In *Braun v. Hamack,* 206 Minn. 572, 289 N.W. 553, it was said (pp. 573, 575, N.W. pp. 553, 555) : "The question presented is: Can an excavating landowner recover from the owner of adjoining burdened land

sums expended by the former to brace and shore the latter's property when excavation could not be safely carried on without such precautions, and when, after having been given notice of the plan to excavate, the owner of the burdened land has refused to provide necessary protection? . . . One in the position of plaintiff, having the remedies mentioned and perhaps others, cannot, we feel, prevail in an action to recover money which he was under no legal or moral obligation to expend. True, it is alleged that he was required to brace and shore defendant's property in order safely to proceed with building operations. But no such action would have been required if plaintiff had not insisted on proceeding with such operations. Can he now base a claim for recovery on a necessity caused in part at least by himself? We think not. The money was expended without legal compulsion and in the absence of an unavoidable urgency. Therefore, plaintiff acted as a volunteer, and we know of no legal principle upon which to premise an obligation, contractual or otherwise, on the part of defendant to reimburse him."

As against these authorities there are a few—none of a court of final jurisdiction—which hold otherwise, but which, in our opinion, are not well considered. They are *Eads v. Gains,* 58 Mo. App. 586; *Walters v. Hamilton,* 75 Mo. App. 237, 247; *Carpenter v. Reliance Realty Co.,* 103 Mo. App. 480, 500, 77 S.W. 1004, 1010; *Avery Brundage Co. v. Grand Lodge of Independent Order of Vikings,* 317 Ill. App. 376, 45 N.E. 2d 889.

As already stated the question has never apparently arisen for decision in Pennsylvania.* In our

* It may be of interest to note that by the Act of June 8, 1893, P. L. 360, Section 8, it was provided, as to Philadelphia, that when the owner of property wished to excavate to a depth not exceed-

opinion, while, as previously stated, the excavating owner is under no duty to shore up, underpin or otherwise protect buildings on adjoining land, and, if the adjoining owner desires such protection he must himself take the necessary measures for that purpose, such adjoining owner is not *obliged* to take such action but may, if he so chooses, allow his building to remain in the condition resulting from the work of excavation in the neighboring property. If, on the other hand, the excavating owner or his contractor deems it necessary for purposes of their own to shore up or underpin buildings on the adjoining land they may themselves perform such work but at their own expense.

Apart from all that has thus been said concerning defendants' liability as adjoining owners it is extremely questionable, to say the least, whether, in any event, plaintiff, who is not the excavating owner but merely the contractor employed by him, can maintain any

---

ing 10 feet below the top of the curb line and the owner of adjoining land refused to underpin or protect any party or other walls wholly or partly thereon after notice from the Bureau of Building Inspection so to do, the inspector might enter upon the premises and take the necessary steps to make the same safe and secure at the expense of the owner of said wall or building of which it was a part. If, however any owner desired to excavate to a greater depth than 10 feet it was his obligation to protect and underpin the wall of any adjoining structure at his own expense. These provisions were not to apply to buildings then erected or to dwelling houses. This Act was repealed by the Act of May 1, 1929, P. L. 1063, which, in section 1807, made it the duty of the owner excavating to a depth below the bottom of any party or other walls on the adjoining property to protect and underpin such walls and the buildings of which they formed a part. Upon refusal to do this after notification an inspector could have the work done at the expense of the excavating owner. This Act was repealed in turn by the Act of April 14, 1937, P. L. 313, which gave authority to the municipalities therein enumerated to govern and regulate by ordinance the construction and repair of all buildings.

such right of action as is here asserted against the defendants inasmuch as there is no privity or other legal relation whatever between them: *E. M. Waldron & Co. v. Aab*, 84 N. J. L. 28, 86 A. 61.

The order of the court granting defendants a new trial is affirmed.