J-S44004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SEAN PATRICK SAUSMAN AND KHUSHBU J. SHAH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BORIS KEISSERMAN AND VRTX INVESTMENTS, INC. | : | No. 423 EDA 2023 |
| Appellants | : | |

Appeal from the Judgment Entered May 8, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  200401444

BEFORE:  OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 3, 2024**

Appellants, Boris Keisserman ("Keisserman") and VRTX Investments,

Inc., ("VRTX" or "Appellants" collectively) appeal from the judgment entered

on May 8, 2023.[1]  After careful consideration, we conclude that the trial court

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellants purport to appeal from the trial court's order entered on January 20, 2023, granting in part and denying in part, Appellants' post-trial motion. An appeal, however, is properly taken from the entry of judgment.  **See** Pa.R.A.P. 301(a) (providing that no order of court shall be appealable until it is entered on the appropriate docket); **Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 514 (Pa. Super. 1995) (an appeal from an order denying a post-trial motion is interlocutory).  On April 26, 2023, this Court entered an order directing Appellants to *praecipe* the trial court for the entry of judgment and to file a certified copy of the trial court docket showing entry of judgment with this Court.  Judgment was entered on May 8, 2023, thereby perfecting this Court's jurisdiction.  **See** Pa.R.A.P. 905(a)(5) (notice of appeal filed after a decision but before entry of an appealable order shall be treated
*(Footnote Continued Next Page)*

erred as a matter of law. Accordingly, we vacate the May 8, 2023 judgment as it pertains to Keisserman, and affirm in all other respects.

We briefly summarize the facts and procedural history of this case as follows. In February 2019, Sean Patrick Sausman and Khushbu J. Shah ("Plaintiffs") purchased a residential rowhouse located at 2330 East Thompson Street in Philadelphia, Pennsylvania. Approximately ten months later, VRTX began excavating the adjacent property located at 2332 East Thompson Street. On October 2, 2020, Plaintiffs filed a complaint against Appellants naming Keisserman, in his individual capacity as owner of the adjoining property, and VRTX, as the general contractor conducting the excavation work, alleging that underpinning[2] and construction work at 2332 East Thompson Street damaged Plaintiffs' foundation and structural walls. In their complaint, Plaintiffs raised claims of trespass, private nuisance, negligence, and negligence *per se*. However, as discussed below, Plaintiffs did not plead or otherwise differentiate liability between the individual defendants in their complaint and, instead, couched all of their claims against Appellants collectively. On October 24, 2022, the court held a bench trial. On October 31, 2022, the trial court entered a verdict in favor of Plaintiffs in the amount

_____

as filed on the day of entry). On May 11, 2023, this Court entered an order discharging our April 26, 2023 order. We have changed the caption to reflect that the appeal is taken from the judgment entered on May 8, 2023.

[2] Underpinning involves below-ground construction work undertaken to strengthen and support a structure. **See** Merriam-Webster's Collegiate Dictionary, Eleventh Edition (2003) at 1364.

of $100,000.00. On November 10, 2022, Appellants moved for leave to file a post-trial motion *nunc pro tunc* and, on the same day, filed a motion requesting post-trial relief pending the receipt of the trial transcripts. By order entered on November 15, 2022, the trial court granted Appellants' request to file a post-sentence motion *nunc pro tunc* after transcription of the notes of testimony. On December 7, 2022, the trial court granted Plaintiffs' request for delay damages, pursuant to Pa.R.C.P. 238, and awarded Plaintiffs the amount of $4,587.00 against Appellants, jointly and severally. As previously mentioned, on January 20, 2023, the trial court granted Appellants' post-trial motion in part and denied it part, clarifying and amending its prior October 31, 2022 order to reflect that Keisserman and VRTX were jointly and severally liable for the $100,00.00 judgment. This timely appeal resulted.[3]

On appeal, Appellants present the following issues[4] for our review:

1. Did the trial court commit an error of law or abuse of discretion by admitting and solely relying upon, over Appellants' objections, the testimony of Carlo Batts, [Plaintiffs'] real estate appraiser, to find that repairs valued at $100,000[.00] are warranted, where the expert admitted he was not qualified as a contractor, engineer, or architect and even [Plaintiffs'] own engineering expert did not opine that such repairs were needed?

---

[3] On February 14, 2023, Appellants filed a single notice of appeal. On February 16, 2023, the trial court directed Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants jointly and timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 2, 2023.

[4] We have reordered Appellants' issues for ease of discussion.

2. Whether the trial court committed an abuse of discretion in prohibiting [Appellants'] expert engineer[,] Jay Rosen[,] from testifying about documents and evidence that were previously admitted [] at trial[?]

3. Did the trial court err as a matter of law in finding [] Keisserman [] personally, and jointly and severally liable along with [] VRTX, where the trial court's basis for finding liability was that "[] Keisserman hired the general contractor," and that the Philadelphia Department of Licensing [and] Inspections issued violations that were "addressed to [] Keisserman and listed the property he owns as the project subject to the violations"?

4. Whether the trial court committed an abuse of discretion in failing to find that [Plaintiffs] were contributorily negligent when they failed to remedy known structural and water infiltration issues prior to VRTX's activity at the neighboring property?

5. Whether the trial court committed an abuse of discretion in finding Appellants liable for trespass and nuisance against [Plaintiffs]?

Appellants' Brief, at 2-4.

In the first issue stated above, Appellants argue that the trial court erred by relying upon the opinion of Plaintiffs' proffered expert, Carlos Batts (Batts), in assessing damages at $100,000.00, because there was evidence of "structural cracking and water infiltration" before Plaintiffs purchased the subject property and Plaintiffs failed to remediate the preexisting conditions. *Id.* at 26-30. Appellants assert that Plaintiffs' proffered expert engineer, Peter Tantala (Tantala) admitted that he failed to consider preexisting damage prior to issuing his opinion. *Id.* at 31. Regarding Batts, Appellants contend that he is a real estate appraiser who "admitted that he was not a contractor nor an engineer nor an architect nor a home inspector" and that his testimony was

"contrary to the standards of qualifying as an expert" and, therefore, he should have been precluded from "opin[ing] on whether structural engineering fixes were required" at the subject property. *Id.* at 37. Appellants argue that the error was compounded when the trial court permitted Batts to testify about the cost of repairs "based upon the admission of a repair estimate from a contractor, Swift & Sons, who did not testify at trial." *Id.* at 36. Appellants challenge the methods of appraisal and whether the Swift & Sons repair estimate was properly authenticated. *Id.* at 38-39. In a similar vein, as presented in issue two above, Appellants also argue they presented an expert engineer, Jay Rosen (Rosen), who "did not believe that such repairs were required" and "did not believe that digging down was necessary." *Id.* at 38 n.8; *see also id.* at 41 ("Rosen, an engineer, testified that the appraiser's belief that digging out the entirety of [the] Philadelphia rowhome basement and underpinning was **not** a necessary repair, but rather, **is** a common way for homeowners to finish or improve utilitarian rowhouse basements and increase living space, not remedy cracks in [an] old basement slab.") (emphasis in original).

We have stated:

The admission of expert testimony is a matter of discretion for the trial court and will not be remanded, overruled or disturbed unless there was a clear abuse of discretion. Indeed, admission of the disputed testimony must be shown to have been not only erroneous but also harmful. Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment.

We recognize, of course, that expert testimony is incompetent if it lacks an adequate basis in fact. While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence. This means that expert testimony cannot be based solely upon conjecture or surmise. Rather, an expert's assumptions must be based upon such facts as the jury would be warranted in finding from the evidence.

*Helpin v. Trustees of Univ. of Pennsylvania*, 969 A.2d 601, 617 (Pa. Super. 2009) (internal citations, quotations, and brackets omitted).

Accordingly, the Pennsylvania Rules of Evidence provide as follows:

**Rule 703. Bases of an Expert's Opinion Testimony**

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject; they need not be admissible for the opinion to be admitted.

Pa.R.E. 703.

Once admitted as an expert,

[i]t is well-established that an expert may express an opinion which is based on material not in evidence, including other expert opinion, where such material is of a type customarily relied on by experts in his or her profession. Such material may be disclosed at trial even though it might otherwise be hearsay (*e.g.*, where the material is the opinion of a treating physician or other expert and that expert does not testify). Such hearsay is admissible because the expert's reliance on the material provides its own indication of the material's trustworthiness: The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to source material, when it is presented through a qualified expert's eyes.

*Boucher v. Pennsylvania Hosp.*, 831 A.2d 623, 628 (Pa. Super. 2003) (internal citations and quotations omitted).

"Further, the weight to be given to an expert's testimony is for the factfinder." **_Rigler v. Treen_**, 660 A.2d 111, 116 (Pa. Super. 1995) (citation omitted). "In reviewing the trial court's exercise of its discretion on this issue, we also keep in mind that the law of Pennsylvania imposes a liberal standard for qualification of an expert, allowing a witness to testify as an expert if he has any reasonable pretension of specialized knowledge on the subject under investigation." **_Id._** (internal citation and quotations omitted).

Here, the trial court determined that Batts was a qualified expert as a certified real estate appraiser, with a degree in urban planning, who was qualified to testify about repair costs and loss in market value. Trial Court Opinion, 8/2/2023, at 15. The trial court stated that "Batts inspected the property, was accompanied by a contractor [from Swift & Sons], and developed a report based upon his observations and the documents he reviewed" and his "methodology is generally accepted[.]" **_Id._** Moreover, the trial court found that it was not error for Batts to rely on the Swift & Sons report because "an expert may express an opinion which is based on material not in evidence, including other expert opinion, where such material is relied upon by experts in his or her profession" and that "appraisal experts reasonably and regularly in their role[s, as appraisers,] bring a contractor to get estimates for the cost of repairs, in addition to evaluating the property with their own expertise." **_Id._** at 16. On the other hand, the trial court determined that Appellants' expert, Rosen, "testified that his report did not rely upon any plans, inspection approvals, violations, Geotech reports, the

cost repair estimate prepared [by] the contractor, or any other construction documents." *Id.* at 20.  Because Rosen only relied upon his visual inspection of the subject property, the trial court "ordered [] Rosen to not testify about the Swift & Sons construction estimate" and instead "confined the expert witness to the four corners of his report." *Id.*

Based upon our review of the record and the applicable law as forth above, we discern no abuse of discretion or error of law regarding the admission of expert testimony.  It was not error to permit Batts to testify as an expert in real estate appraisal or for him to rely on an estimate from a contractor who, along with Batts, was present for inspection following the alleged damage.  The bulk of Appellants' claim, however, goes to the weight of expert opinion, not admissibility.  The trial court had discretion to admit and appropriately weigh the evidence.   Based upon our appellate standard of review, we will not usurp those determinations, and we conclude that the trial court did not abuse its discretion in considering the scope of Rosen's testimony.  Accordingly, we conclude that Appellant's first two issues are without merit.

Next, as set forth in the third issue above, Appellants contend that the trial court erred by holding Keisserman personally, jointly, and severally liable with VRTX.  *Id.* at 15-25.  Appellants argue that although "Keisserman owned the property at 2332 East Thompson Street [and h]e financed the construction, [he] had no hand in managing construction, was never at the jobsite, hired VRTX to manage and direct all construction activities and

subcontractors, including the foundation subcontractors who performed the underpinning [work] that [Plaintiffs], and the trial court, assert[] was the cause of damage[.]" *Id.* at 23-24. As such, Appellants maintain that "[t]here were no allegations or testimony adduced at trial [which established] that individual Keisserman personally engaged in any acts constituting trespass, private nuisance, or negligence." *Id.* at 15; *see also id.* at 20 ("[Plaintiffs] introduced no evidence that individual Appellant Keisserman breached any duty of care ow[]ed because Keisserman performed **no** work at issue on the properties at issue.") (emphasis in original).

According to Appellants, the trial court, in concluding that Keisserman could be held vicariously liable, erred in relying on Restatement (Second) of Torts § 422A and § 819.[5] Appellants contend that these provisions of the

---

[5] Section 422(A) provides, in pertinent part:

> One who employs an independent contractor to do work which the employer knows or should know to be likely to withdraw lateral support from the land of another is subject to the same liability for the contractor's withdrawal of such support as if the employer had retained the work in his own hands.

Restatement (Second) of Torts § 422A (1965). Section 819 addresses circumstances in which lateral support of land has been negligently withdrawn, and states:

> One who negligently withdraws lateral support of land in another's possession, or of artificial additions to it, is subject to liability for harm resulting to the other's land and to the artificial additions on it.

Restatement (Second) of Torts § 819 (1979).

Restatement, which pertain to damage resulting from the removal of lateral support by adjacent landowners, have not yet been adopted in Pennsylvania. *Id.* at 16. Instead, Appellants argue that only Sections 409, 416, and 427 of the Restatement are applicable since they have been adopted in Pennsylvania. Appellants further point out that the applicable Restatement provisions "provide [only] a narrow exception to the general rule that property owners are not liable for the acts of independent contractors, *i.e.*, where the work is of the type that an employer should recognize as likely to create a special danger or 'peculiar risk' of physical harm to others unless special precautions are taken." *Id.* at 17. Here, Appellants assert that Plaintiffs did not aver in their complaint, and did not otherwise present evidence to suggest, "that excavation and underpinning are unusually dangerous activities." *Id.* at 18. Moreover, Appellants assert that there were no allegations or evidence presented suggesting "Keisserman [under]took any acts that would support his individual liability for the acts of [] VRTX, an independent contractor." *Id.* at 19. Appellants suggest that there was no evidence that Keisserman directed VRTX in its underpinning operations or that those operations presented a particular risk "for [the purpose of] imputing vicarious liability in construction work." *Id.* at 20. Because VRTX was an independent contractor and "[t]here was no evidence individual Appellant Keisserman acted negligently," Appellants contend that Plaintiffs "failed to plead vicarious liability, or otherwise assert facts supporting a vicarious liability claim." *Id.*

at 20-23. Appellants, therefore, conclude that Keisserman was entitled to post-trial relief.

Our review of a trial court's denial of a motion for post-trial relief is limited:

> Our review is limited to determining whether the trial court abused its discretion or committed an error of law. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. If the alleged mistake concerned an error of law, we will scrutinize for legal error. On questions of law, our standard of review is de novo and our scope of review is plenary.
>
> **Zaleppa v. Seiwell**, 9 A.3d 632, 635 (Pa. Super. 2010) (citations and quotation marks omitted).
>
> \*           \*           \*
>
> A plaintiff may pursue a negligence action against a defendant on the theory of direct liability or vicarious liability. Under a direct liability theory, a plaintiff seeks to hold the defendant responsible for harm the defendant caused by the breach of a duty owing directly to the plaintiff. Vicarious liability, on the other hand, is a policy-based allocation of risk. Vicarious liability, sometimes referred to as imputed negligence, means in its simplest form that, by reason of some relation existing between A and B, the negligence of A is to be charged against B although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it. Once the requisite relationship (i.e., employment, agency) is demonstrated, the innocent victim has recourse against the principal, even if the ultimately responsible agent is unavailable or lacks the ability to pay.
>
> **Green v. Pa. Hosp**., 123 A.3d 310, 316 (Pa. 2015) (citations and quotation marks omitted).
>
> \*           \*           \*
>
> Under Pennsylvania law, in order to hold an employer vicariously liable for the negligent acts of its employee, these acts must be

- 11 -

committed during the course of and within the scope of the employment.

> [Generally,] [t]he conduct of an employee is considered within the scope of employment for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

*Ludwig v. McDonald*, 204 A.3d 935, 943 (Pa. Super. 2019) (citations and quotation marks omitted); *see also* Restatement 2d of Agency, § 228.

"Generally, the scope of [an employee's] employment is a fact question for the [factfinder]. Where the facts are not in dispute, however, the question of whether ... the [employee] is within the scope of this [] employment is for the court." *Ferrell v. Martin*, 419 A.2d 152, 155 (Pa. Super. 1980); *see also Ludwig*, 204 A.3d at 943.

*Spencer v. Johnson*, 249 A.3d 529, 549–550 (Pa. Super. 2021). Our Supreme Court has stated that it is the plaintiff's burden to prove negligence "against a defendant on theories of direct and vicarious liability, asserted either concomitantly or alternately." *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 597 (Pa. 2012).

Pennsylvania courts look to the Restatement (Second) of Torts to ascertain whether an employer is liable for the actions of an independent contractor. Pursuant to Restatement (Second) of Torts, § 409, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." Restatement (Second) of Torts § 409 (1965) (adopted as law in *Pennsylvania in*

*Philadelphia Elec. Co. v. James Julian, Inc.*, 228 A.2d 669 (Pa. 1967)).

"An exception to this general rule is recognized, where the independent contractor is hired to do work which the employer should recognize as likely to create a special danger or peculiar risk of physical harm to others unless special precautions are taken." *Motter v. Meadows Ltd. P'ship*, 680 A.2d 887, 890 (Pa. Super. 1996), *citing* Restatement (Second) of Torts, §§ 416 and 427 (1965) (adopted as law in *James Julian, supra*).

More specifically, Section 416 of the Restatement (Second) of Torts, provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Restatement (Second) of Torts § 416 (1965).

Likewise, Section 427 of the Restatement (Second) of Torts, states:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

Restatement (Second) of Torts § 427 (1965). "[T]his Court has noted that the terms 'special danger' or 'peculiar risk' are used interchangeably." *Edwards v. Franklin & Marshall Coll.*, 663 A.2d 187, 189 (Pa. Super. 1995)

(citation omitted). These exceptions are to be viewed narrowly. *Motter*, 680 A.2d at 891; *see also Ortiz,* 528 A.2d at 1359 (citation omitted) ("In order for the liability concepts involving contractors to retain any meaning, especially in industries such as construction where almost every job task involves the potential for injury unless ordinary care is exercised, peculiar risk situations should be viewed narrowly, as any other exception to the general rule is usually viewed.").

With regard to special danger and peculiar risk, as we explained in *Ortiz v. Ra-El Dev. Corp.*, 528 A.2d 1355 (Pa. Super. 1987):

> The rationale underlying liability is that an employer of the independent contractor ought to anticipate a heightened level of risk where the work is especially dangerous or peculiarly risky. It is reasonable for the employer to take precautions or cause the independent contractor to take precautions to minimize the possibility of injury to others. After all, it is the employer who primarily benefits from the contractor's work and the employer who selects the independent contractor. Furthermore, the employer is in a position to make the selection of the independent contractor based on competency. The employer also may demand indemnity from the contractor. Finally, the employer, anticipating the risk, can purchase insurance to cover it.
>
> *       *       *
>
> The question then becomes, what constitutes a 'special danger' or 'peculiar risk?' … We [held] that a special danger or peculiar risk exists where:
>
>> 1) the risk is foreseeable to the employer of the independent contractor at the time the contract is executed, *i.e.*, a reasonable person, in the position of the employer, would foresee the risk and recognize the need to take special measures; **and**
>>
>> 2) the risk is different from the usual and ordinary risk associated with the general type of work done, *i.e.*, the

- 14 -

>    specific project or task chosen by the employer involves
>    circumstances that are substantially out-of-the-ordinary.

*Ortiz*, 528 A.2d 1355, 1357–1358 (internal citation omitted; emphasis in original). We have found that "the definition of 'peculiar risk' or 'special danger' requires that '... the risk be recognizable in advance and contemplated by the employer [of the independent contractor] at the time the contract was formed.... [and that] it must not be a risk created solely by the contractor's 'collateral negligence' ... [*i.e.*,] negligence consisting wholly of the improper manner in which the contractor performs the operative details of the work.'" *Edwards*, 663 A.2d at 190 (internal citation omitted).

Here, as Appellants suggest, the trial court erroneously failed to undertake any analysis to determine the applicability of Restatement (Second) of Torts, §§ 409, 416, and 427, as adopted in Pennsylvania. It was Plaintiffs' burden to plead and prove Keisserman's vicarious liability and, in this case, undertake an inquiry into whether the excavation at issue constituted a peculiar risk or special danger as required. The trial court's subsequent failure to analyze the facts of this case pursuant to *Ortiz*, *supra*, constituted legal error.[6]

_____

[6] Furthermore, we recognize that "[c]haracterizing all excavation work as involving a special danger or peculiar risk would render the terms 'special danger' or 'peculiar risk' meaningless" and "to find every trench inherently dangerous would allow the exception[s] … of the Restatement to swallow the general rule in Section 409[.]" *Dunkle v. Middleburg Mun. Auth.*, 842 A.2d 477, 484 (Cmwlth. Ct. 2004) (examining *Motter* and concluding that where there has been a failure to establish that the particular trenching presented a
*(Footnote Continued Next Page)*

Instead, the trial court applied §§ 422(A) and 819, set forth above, (neither of which have been adopted by our Supreme Court as the common law of Pennsylvania) without assessing § 409 and the narrow exceptions adopted under Pennsylvania law in §§ 416 and 427. The Restatement (Second) has not been adopted in its entirety in Pennsylvania and specific sections do not become the law in the Commonwealth until our Supreme Court adopts each individually:

> The Restatements are the product of the American Law Institute, a non-profit organization of 4000 lawyers, judges, and law professors, established to produce scholarly work to clarify, modernize, and otherwise improve the law. They synthesize the common law and articulate the reasoned, mainstream, modern consensus.
>
> To be sure, even when restatement provisions have been adopted by [our Supreme] Court, they are not controlling in the manner of a statute.

*Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 86 (Pa. 2023) (internal citations, quotations, ellipses, and original brackets omitted); *citing Coyle by Coyle v. Richardson-Merrell, Inc.,* 584 A.2d 1383, 1385 (Pa. 1991) ("Even where

---

peculiar risk or danger, "the trial court correctly applied the common law rule that an employer will not be held vicariously liable for the tortious conduct of its contractors"). "This is not to say that all trenching activities are ordinary" and the "plaintiff still has the opportunity to establish that 'the risk is different from the usual and ordinary risk associated with the general type of work done.'" *Dunkle*, 842 A.2d at 484 (citation omitted). "The distinction between ordinary risk and peculiar risk is a mixed question of law and fact which can be made, in clear cases, by the trial judge as a matter of law" but, again, "should be viewed narrowly" as exceptions to the general rule. *Motter*, 680 A.2d at 891 (citations omitted). Here, however, neither Plaintiffs nor the trial court undertook such an assessment before, during, or after trial.

[our Supreme] Court has 'adopted' a section of the Restatement as the law of Pennsylvania, the language is not to be considered controlling in the manner of a statute. Such precepts, though they may govern large numbers of cases, are nothing other than common law pronouncements by the courts; their validity depends solely on the reasoning that supports them. Where the facts of a case demonstrate that the rule outruns the reason, the court has the power, indeed the obligation, to refuse to apply the rule, a power for the most part unavailable where the rule is legislatively ordained. Were it otherwise, [the Pennsylvania Supreme Court's] recognition of the work of the American Law Institute would approach an improper conferral of legislative authority."). Thus, as they have not been adopted by our Supreme Court, it was error for the trial court to rely upon Sections 422(A) and 819 of the Restatement (Second) of Torts. As "[a]n intermediate appellate court, this Court is obligated to follow the precedent set down by our Supreme Court. It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court." *Bell v. Willis*, 80 A.3d 476, 479 (Pa. Super. 2013). For these reasons, the trial court erred in relying upon Restatement Second of Torts, Sections 422(A) and § 819.

The trial court further relied upon the Pennsylvania Supreme Court's 1954 decision in *Warfel v. Vondersmith*, 101 A.2d 736 (Pa. 1954). In that case,

> a general contractor, entered into a contract with Lancaster Newspapers, Inc., to demolish old structures and erect a new

- 17 -

building on property belonging to it in the City of Lancaster. The new building was of heavy construction and required excavation for foundations and cellar to a depth of [] 16 to 20 feet below the street level. Defendants are the owners of a property adjoining that of the Newspapers, and on it was erected a two-story brick store building together with a one-story structure used as a store room. These buildings were situated along the boundary line between the two properties; neither of them had a cellar or basement, but they rested on foundations which in general extended not more than 3 or 4 feet below the surface of the ground.

Plaintiff's plans called for an excavation along the boundary line for a distance of approximately 160 feet. Before starting operations [plaintiff] notified defendants of his intentions and that they should take all necessary measures to support their buildings. After some consultation and negotiations which proved abortive, defendants employed another contractor who undertook to protect their buildings from collapse by erecting certain temporary roof props or cribbing inside their buildings. Plaintiff notified defendants that in his opinion these precautions were wholly inadequate, but defendants refused to do any underpinning or shoring outside or under their buildings. Thereupon, allegedly in order to prevent interference with his work and injury to his workmen or other persons, plaintiff proceeded to underpin defendants' buildings at a cost of $3,572.37. Defendants had given plaintiff permission to enter upon their premises for that purpose but made no promise, express or implied, to pay the cost. Plaintiff brought the present action to recover the cost of the work. Defendants not only denied any obligation on their part to make such payment but filed a counterclaim for alleged damage to their property due to blasting and other operations conducted by plaintiff. The jury returned a verdict for plaintiff in the sum of $3,183.05, apparently the full amount of the claim less part of the counterclaim.

*Warfel*, 101 A.2d at 737.

The trial court herein relied upon certain selected portions of the *Warfel* decision to conclude that Keisserman was personally and vicariously liable for the acts of VRTX. Trial Court Opinion, 8/2/2023, at 11-14. Citing *Warfel*, the trial court concluded that an owner of land is entitled to lateral support

- 18 -

and if an adjoining owner excavates such support and causes the land to fall, the excavating owner is responsible for damages without regard to the degree of care exercised or if the work was performed by an independent contractor. *See id.* at 11. The trial court further noted that "[t]he excavating owner does have the duty to give notice to the adjoining owner of his intention to excavate and thus afford the latter an opportunity to protect his buildings from all likely injury." *Id.*

However, the trial court did not mention, let alone examine or consider, other relevant portions of the *Warfel* decision. Importantly, the *Warfel* Court stated, in full:

> As far as the rights and obligations of one excavating on his own property are concerned the law is so well established as to require no citations of the multitude of authorities. At common law an owner of land is entitled to have it supported in its natural condition by the land of the adjoining proprietor. This right to lateral support is a natural right, not simply an easement but an incident to the land, -a right of property attached to and passing with the soil. If the adjoining owner by excavation removes such support, thereby causing the land to fall, he is responsible in damages without regard to his degree of care or to the fact that the excavation may have been performed by an independent contractor. **The right to lateral support, however, does not extend to structures erected on the property which materially increase the lateral pressure and therefore contribute to the subsidence of the land. As far as such structures are concerned an owner may lawfully excavate on his land although he injures [the structures]; in the absence of negligence (which varies with the circumstances) he is not obliged to underpin or otherwise support them and he incurs no liability for damage which may be caused them by the excavation**. His only duty is to give notice to the adjoining owner of his intention to excavate and thus afford the latter an opportunity of protecting his buildings from all likely injury.

- 19 -

So much as to the well recognized rights and duties of the excavating owner. **But when we come to a consideration of the rights and obligations of the adjoining owner we find a marked dearth of authoritative judicial decision. True, it is generally held that if such owner wishes to protect his buildings from collapse it is for him to take the necessary measures at his own expense. But is he obliged, as a duty to the excavating owner or contractor, to underpin and shore up his buildings, and, if he refuses so to do after having been properly notified, can the excavating owner or contractor thereupon perform that work and compel him to pay the cost thereof? The weight of existing authority is to the effect that his failure to support his building does not authorize the excavating owner or contractor to do so at the adjoining owner's expense.**

*Warfel*, 101 A.2d at 737–738 (emphasis added). The trial court herein simply ignored the language emphasized above.

Moreover, to support its decision, the *Warfel* Court examined cases in other jurisdictions to ultimately conclude:

the excavating owner is under no duty to shore up, underpin or otherwise protect buildings on adjoining land, and, if the adjoining owner desires such protection he must himself take the necessary measures for that purpose, such adjoining owner is not obliged to take such action but may, if he so chooses, allow his building to remain in the condition resulting from the work of excavation in the neighboring property. If, on the other hand, the excavating owner or his contractor deems it necessary for purposes of their own to shore up or underpin buildings on the adjoining land they may themselves perform such work but at their own expense.

*Id.* at 739–740. The trial court did not address these aspects of *Warfel*.[7]

_____

[7] Finally, upon further review we note that *Warfel* has only been cited generally in one other decision in the Commonwealth, not applicable herein. *Rhoads Indus., Inc. v. Shoreline und., Inc.*, 2022 WL 612662 (E.D. Pa. Mar. 1, 2022) (unpublished memorandum). The *Rhoads* court was called

*(Footnote Continued Next Page)*

For all of the foregoing reasons, the trial court erroneously found Keisserman vicariously liable based upon the record before us. Plaintiffs bore the burden of pleading and then establishing their claims against both defendants and did not do so. More specifically, Plaintiffs needed to assert and prove negligence against both parties to show joint and several liability or, alternatively, negligence against VRTX, as contractor, with vicarious liability attributed to Keisserman.[8] Moreover, in proving vicarious liability

_____

upon to determine whether the case, involving "pile driving" should survive summary judgment or required expert testimony. The **Rhoads** Court noted that "the Pennsylvania Supreme Court has long-held that 'one who employs an independent contractor to do work involving a special danger to others' may be subject to liability for resulting harm, such as damage to physical property" but recognized that "a determination as to whether pile driving is an 'abnormally dangerous activity' under Pennsylvania law [was] not presently before" it. **Id.** at *6 and n.8.

[8] Upon review of the record, we note the following. Initially, Plaintiffs' complaint named Appellants individually. **See** Complaint, 10/2/2020, at ¶¶ 2 and 3 ("Defendant, Boris Keisserman, is an adult individual[;] Defendant VRTX Investments, Inc, is a Pennsylvania corporation[.]"). However, at counts I-IV of the complaint, Plaintiffs failed to differentiate the defendants on theories of direct and vicarious liability, either concomitantly or alternately. **See id.** at ¶ 28 ("As a result of Defendants' trespass, Plaintiffs have suffered and are continuing to suffer damages[.]"), ¶ 35 ("As a result of Defendants' wrongful interference, Plaintiffs have suffered and are continuing to suffer damages" for private nuisance.), ¶ 42 ("As a result of Defendants' negligence, Plaintiffs have suffered damages[.]"), and ¶ 52 ("As a result of Defendants' negligence [*per se*], Plaintiffs have suffered damages[.]"). Eventually, Plaintiffs argued that Keisserman was vicariously liable pursuant to **Warfel** and Restatement (Second) of Torts § 819. **See** Plaintiffs' Trial Brief, 10/25/2022, at 6-7. Appellants, however, filed a trial brief arguing that Keisserman could not be held personally liable as a matter of law pursuant to **Ortiz** and Restatement (Second) of Torts §§ 409, 416, and 427. **See** Defendant's Trial Memorandum of Law, 10/25/2022, at *2-4 (unpaginated). Plaintiffs, thereafter, failed to
*(Footnote Continued Next Page)*

against Keisserman, Pennsylvania law required Plaintiffs to show a special

danger or a peculiar risk as exceptions to the general rule that an employer

not generally liable for the physical harm caused by a contractor pursuant to

Restatement (Second) Torts §§ 409, 416, and 427. Because excavation work

is not generally considered a special danger or peculiar risk, Plaintiffs

_____

argue concomitant or alterative theories of direct and vicarious liability in their opening argument before the trial court. *See* N.T., 10/24/2022, at 9 ("My clients and the witness testimony here today is going to show and describe negligent defective construction and what happens to innocent homeowners who are forced to live next to such work."). In closing, Plaintiffs solely relied upon ***Warfel***. *See* N.T., 10/25/2022, at 115 ("In ***Warfel***[,] the Supreme Court established a principle of law back in 1954 that holds through to the current day, and that principle is, [""]if the adjoining landowner by excavation removes such support thereby [causing] the land to fall, he is responsible for damage without regard to the degree of care or to the fact that the excavation may have been performed by an independent contractor.[""]); *see also id.* at 121 ("[A]s a matter of law[, …]an owner of the property is always liable for damage caused by an adjacent property during underpinning[.]"). In contrast, Appellants, in their opening argument asserted that there was no evidence "that Boris Keisserman, the individually named defendant, was directing the construction activity on the property and as a matter of law [] cannot be held legally responsible as employer of an independent contractor who he had hired, paid to manage the construction and work at the site."). N.T., 10/24/2022, at 11. Appellants argued similarly in closing. N.T., 10/25/2022, at 126-127 (arguing Keisserman could not be held liable as a matter of law because he never went to the property, had no involvement in hiring subcontractors or "the underpinning team," and did not direct construction and that VRTX admitted that it "was solely responsible for building and managing the property."). In their post-trial motion, Appellants continued to argue that Keisserman was not vicariously liable. Appellants pointed out to the trial court that "Plaintiff[s] failed to plead vicarious liability or any facts supporting a vicarious liability claim." Defendants' Memorandum of Law for Post-Trial Relief, 11/10/2022, at ¶ C(2); *see id.* (arguing that ***Ortiz*** and Restatement (Second) Torts §§ 409, 416, and 427 control). Appellants raised these same issues in their concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court, however, never addressed Appellants' contentions throughout the litigation or in its subsequent opinion pursuant to Pa.R.A.P. 1925(a).

nonetheless had the opportunity to establish that the risk in this specific instance was different from the usual and ordinary risk associated with the general type of work done. In order to find vicarious liability, the trial court was required to conduct an analysis pursuant to *Ortiz* and make an express finding. Because the trial court did not, it erred as a matter of law in finding Keisserman vicariously liable for VTRX's negligence and Keisserman is entitled to relief.

Although Appellants do not separately set forth this issue in their statement of questions presented, Appellants next contend that Plaintiffs failed to prove causation by a preponderance of the evidence in order to support a cause of action for negligence against VRTX. Appellants' Brief at 25. Appellants' claim turns largely on "pre-existing structural cracking and water infiltration" in Plaintiffs' basement as identified by a home inspection predating the construction at issue. *Id.* at 26-29. As a result, Appellants contend that Plaintiffs "failed to distinguish how this pre-existing damage … was distinct from any alleged damage caused by Appellant VRTX." *Id.* at 30. We will examine this portion of Appellants' claim with the fourth appellate issue above, that Plaintiffs were comparatively negligent for failing to fix "preexisting structural cracks, including cracks in the basement, substandard framing beneath the first floor, and ongoing water filtration issues at the time [Plaintiffs] purchased their property." *Id.* at 42. Thus, Appellants contend that the preexisting damage to Plaintiffs' home was "indistinguishable from any new damage that might have arisen[.]" *Id.* at 42-43.

Our Supreme Court has stated:

When reviewing a sufficiency of the evidence claim in a civil case, an appellate court, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner, must determine whether the evidence was sufficient to enable the factfinder to find that all the elements of the causes of action were established by a preponderance of the evidence. Whether a claim was established under a preponderance of the evidence standard is tantamount to a "more likely than not" inquiry.

*Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 34–35 (Pa. 2011)

(internal citations, parentheticals, and most quotations omitted).

We previously determined:

In establishing a cause of action in negligence, plaintiffs bear the burden of demonstrating that there was a duty or obligation recognized by law, breach of that duty by the defendants, a causal connection between the defendants' breach of that duty and the resulting injury, and actual loss or damage suffered by the complainants. Essential to [this] theor[y] is the element of causation.

\* \* \*

Cause in fact or 'but for' causation provides that if the harmful result would not have come about but for the negligent conduct then there is a direct causal connection between the negligence and the injury.

*First v. Zem Zem Temple*, 686 A.2d 18, 21 (Pa. Super. 1996) (citations omitted).[9]

_____

[9] "It is well established that the burden of establishing comparative negligence rests on the defendant. In demonstrating that the plaintiff was negligent, [a] defendant has the burden of showing that [plaintiff's] conduct was unreasonable under the circumstances." *Rose v. Annabi*, 934 A.2d 743, 746
*(Footnote Continued Next Page)*

Here, upon our review of the certified record, we are convinced that, by a preponderance of the evidence, Plaintiffs proved damage, separate and apart from the alleged pre-existing damage, that was caused by VRTX's excavation. Peter Tantala, admitted without objection as an expert engineer, testified with the use of trial exhibits, that he observed, *inter alia*, "fresh recent cracks between [] two windows, the first story and second story window, as well as a fresh recent crack above the second story window emanating up toward the roofline." N.T., 10/24/2022, at 22; **see also id.** at 28 ("The perpendicular wall to the right in this photo is the party wall, and that was the wall being underpinned or undermined, and the orientation, the location, the aperture, the width of those cracks, tells us a lot professionally about the movement. [First], the cracks are fresh and recent. That is clear. Secondly, the orientation of the cracks indicates that the party wall, as it was undermined, moved both downward and had an outward lateral component."); **see also id.** at 33 ("In addition to numerous cracks on the exterior of the building, there were [subtle] signs of cracks on the second story floor, as well."). Tantala attributed the damage to VRTX's construction because the cracks were in the vicinity of the undermining and had not been there before construction as evidenced by prior documentation he reviewed.

_____

747 (Pa. Super. 2007). We reject Appellants' suggestion that Plaintiffs were comparatively negligent because, as we will explain, the evidence showed that the new damage was wholly related to VRTX's construction and separate and apart from any prior condition of the property. As such, Plaintiffs did not act unreasonably and this aspect of Appellant's claim lacks merit.

*Id.* at 23. Sean Sausman testified that after construction began, he noticed a "giant crack in our house that was not there" previously. *Id.* at 127. He described the crack as running the entire length of the basement floor and then perpendicularly up the rear wall of the house. *Id.* Sausman further testified that the new cracks also ran "up the rear exterior wall." *Id.* at 128. He "first noticed the cracking on November 10, 2019," three days after VRTX broke ground. *Id.* at 122-123.

Based on the foregoing evidence, we conclude that Plaintiffs proved by a preponderance of the evidence that the harmful result would not have come about but for VRTX's negligent conduct and there was a direct causal connection between the negligence and the injury. Appellants' fourth issue lacks merit.

In the last issue raised, Appellants contend that the trial court failed to set forth facts that support its findings that Appellants committed trespass or should be liable for private nuisance. Appellants' Brief at 43-47. We examine each tort separately.[10]

With regard to trespass, Appellants argue that Keisserman was not individually liable because he was never "at the construction site or had anything to do with construction activities aside from hiring Appellant VRTX"

_____

[10] Initially, we recognize that these issues are not consequential as Appellants fail to explain how vacating judgments for trespass and nuisance would affect damages in this case. Damages were not apportioned by the trial court and were awarded solely for repair costs to Plaintiffs' home as alleged in the count for negligence.

and there was no evidence "that VRTX intentionally entered [Plaintiffs'] property" or that damaging Plaintiffs' sidewalk "was intentional [because] Appellant VRTX repaired and replaced the sidewalk" promptly. *Id.* at 43-44. Accordingly, Appellants argue that the trial court erred in finding Appellants liable for trespass because Appellants "intended to be on the land to excavate and intended for their cement truck to drive over Plaintiffs' sidewalk." *Id.* at 44-45, *citing* Trial Court Opinion, 8/2/2023, at 23.

Viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner, we must determine whether the evidence was sufficient to enable the factfinder to find that all the elements of the cause of action were established by a preponderance of the evidence. We previously determined:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
>
> > (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
> >
> > (b) remains on the land, or
> >
> > (c) fails to remove from the land a thing which he is under a duty to remove.
>
> In the context of a trespass, "intent" refers to intent to be on the land.
>
> It is, therefore, immaterial whether or not the actor honestly and reasonably believes that the land is his own, or that he has the consent of the possessor or of a third person having power to give consent on his behalf, or that he has a mistaken belief that he has some other privilege to enter.

> Stated another way, a person is a trespasser merely by intending to be where he is. The intent to be on another's land is not required to prove trespass.
>
> \* \* \*
>
> Additionally, one who intentionally causes a third person to enter another's land is liable for trespass:
>
>> If, by any act of his, the actor intentionally causes a third person to enter land, he is as fully liable as though he himself enters. Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person's entry if it be a trespass. This is an application of the general principle that one who intentionally causes another to do an act is under the same liability as though he himself does the act in question. So too, one who by physical duress causes a third person to go upon the land of another or who carries the third person there against his will is liable as a trespasser, although the third person may not be liable.
>
> A person who authorizes or directs another to trespass is himself liable as a trespasser to the same extent as if the trespass were committed directly by himself. This is true even though the authority or direction be given to one who is an independent contractor.

*Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Prac. Knowledge*, 102 A.3d 501, 506-507 (Pa. Super. 2014) (internal citations and original brackets omitted).

More specifically, in *Liberty Place*, we examined our Supreme Court's seminal trespass decision in *Kopka v. Bell Tel. Co. of Pa.*, 91 A.2d 232, 235 (1952), and further clarified:

> In *Kopka*, the defendant clearly intended to cause the third party to trespass. The defendant (a telephone company) had an agreement with the third party to dig holes for telephone wires and to erect the wires. *Kopka*, 91 A.2d at 233. The defendant

had directed the third party where to dig holes and erect the telephone poles, including over the plaintiff's land for which the defendant lacked an easement. *Id.* On those facts, our Supreme Court found the defendant liable even though it did not enter the plaintiff's land. *Id.* at 234.

***Liberty Place***, 102 A.3d at 507.

Based on the foregoing, we reject Appellants' claim that VRTX did not intentionally enter Plaintiffs' property without authority. There is no dispute that VRTX was responsible for driving a cement truck over Plaintiffs' land. VRTX was trespassing merely by intending to be where it was and the intent to be on another's land was not required to prove trespass. Moreover, in contrast to ***Kopko***, here, there is no evidence that Keisserman gave authority or directed VRTX to trespass. The owner of VRTX testified that Keisserman owned the property and only financed the job. N.T., 10/25/2022, at 6. He later confirmed that Keisserman's limited involvement in the project was to "write checks and hire the architect." *Id.* at 30. Keisserman testified similarly. He denied directing VRTX, testifying that he was "not involved at all," that he "[j]ust paid" but VRTX managed all aspects of construction and was "responsible for the entire project." N.T., 10/24/2022, at 256. As such, there was simply no evidence that Keisserman directed VRTX to trespass. Therefore, there was evidence that VRTX was liable for trespass, but the trial court erred by determining Keisserman was also liable. Hence the trial court erred in entering judgment against Keisserman for trespass.

Finally, Appellants assert there were no facts to support a finding that Appellants were liable for private nuisance. Appellants' Brief at 45. Appellants

claim that "VRTX was engaging in lawfully permitted work that was interrupted by a neighbor who had speculative fears and anxiety about construction next door." *Id.* at 46. Appellants suggest that "anxiety is not a basis for a lawsuit and more specifically, not the basis for a nuisance claim." *Id.* Appellants suggest that the trial court relied "solely on Appellant[s] having received [building] violations … where there was no testimony that [Plaintiffs] could not, or at any relevant time did not, live in their home or were forced to avoid or not use any room or appliance, or curtail their homelife in anyway whatsoever." *Id.* at 46-47.

Viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner, we must determine whether the evidence was sufficient to enable the factfinder to find that all the elements of the cause of action were established by a preponderance of the evidence. We have previously determined:

> In *Waschak v. Moffat*, 109 A.2d 310 (Pa. 1954), our Supreme Court adopted Restatement of Torts § 822 as the law of Pennsylvania. In *Kembel v. Schlegel*, 478 A.2d 11 (Pa. Super. 1984), we ruled that the successor section in the Restatement (Second) of Torts § 822 contained the authoritative definition of the tort of private nuisance. Section 822 provides:
>
> § 822. **General Rule**
>
> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
> > (a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

The Restatement indicates that a defendant is not subject to liability for an invasion unless the invasion caused significant harm, which is defined as:

§ 821F. **Significant Harm**

There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose.

Comment C to section 821F further explains the meaning of significant harm:

c. *Significant harm.* By significant harm is meant harm of importance, involving more than slight inconvenience or petty annoyance. The law does not concern itself with trifles, and therefore there must be a real and appreciable invasion of the plaintiff's interests before he can have an action for either a public or private nuisance....

[I]n the case of a private nuisance, there must be a real and appreciable interference with the plaintiff's use or enjoyment of his land before he can have a cause of action.

....

When [the invasion] involves only personal discomfort or annoyance, it is sometimes difficult to determine whether the invasion is significant. The standard for the determination of significant character is the standard of normal persons or property in the particular locality. If normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant.

*Karpiak v. Russo*, 676 A.2d 270, 272–273 (Pa. Super. 1996).

Here, Appellants' claim merely challenges whether there was significant

harm that caused an invasion of Plaintiffs' interest in the private use and

enjoyment of their land. Upon our review of the record, Sean Sausman testified extensively that the construction at issue caused Plaintiffs fear and anxiety about the structural integrity and safety of their home. *See* N.T., 10/24/2022, at 123 ("I wanted to make sure it was a safe home for my wife and I."); *see also id.* at 127 ("I had no idea at the time when we first noticed [cracking]. I thought the most important thing was to make sure it wasn't extending. … Again, I wasn't sure what to do and my wife was very upset. I was trying to figure out what our next steps would be[.]"); *id.* at 130 ("[W]e monitored extensively. … I had a lot of anxieties and fears about the underpinning process."). Based upon the foregoing we conclude that Plaintiffs provided sufficient evidence that normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable, and, therefore the invasion was significant. As such, Plaintiffs were entitled to judgment against VRTX. With regard to Keisserman, however, as previously noted in our discussion of trespass, there was simply no evidence that Keisserman directed VRTX's activities. Therefore, there was evidence that VRTX was liable for private nuisance, but the trial court erred by determining Keisserman was also liable and, therefore, the trial court erred in entering judgment against Keisserman for private nuisance.[11]

_____

[11] Finally, we recognize that the same firm represented both VRTX and Keisserman throughout litigation and on appeal. *See* Plaintiffs' Reply Brief, at 5 n.2. "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest" where, *inter alia*, "the representation of one
*(Footnote Continued Next Page)*

Judgment vacated as to Keisserman. Case affirmed in all other respects. Jurisdiction relinquished.

Judge Nichols concurs in the result.

Judge Colins files a Concurring Statement which Judge Nichols joins.

_____

client will be directly adverse to another client" or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client[.]" Pa.R.P.C. 1.7. "[A]ttorneys will not be permitted to represent conflicting interests unless those interests agree to be so represented." *Seifert v. Dumatic Indus. Inc.*, 197 A.2d 454, 455 (Pa. 1964). "It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts." *Id.* "Within the meaning of [Canon 6 of the Canons of Professional Ethics], a lawyer represents conflicting interests when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." *Id.* at 455 n.2. On appeal, Plaintiffs may have discovered the potential divergence of interests at this late stage, however, Plaintiffs' failure to distinguish between defendants at trial, as detailed at length at n. 8, shows that Plaintiffs never did anything to bring the conflict before the trial court, including lodge their own appeal. In turn, at trial, counsel for Appellants were never called upon to advocate for one client at the expense of another. Under these circumstances, Plaintiffs failed to raise the issue before the trial court and the trial court had no occasion to enter an order addressing a potential conflict. After the appeal was taken, Keisserman then asserted a lack of evidence to prove vicarious liability and Appellants had every right to challenge the trial court's judgment as insufficient under Pennsylvania law. To the extent that Plaintiffs now suggest that there was a conflict of interest, as an error correcting court, we find the issue waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>12/3/2024</u>